# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MICHELE POLITTE,           )
)
          Plaintiff,       )
)
vs.                      )     Case No. 4:09CV00629 AGF
)
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
)
          Defendant.     )

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Michele J. Politte was not disabled and, thus, not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further consideration.

Plaintiff, who was born on July 9, 1968, filed for SSI on July 24, 2006, at the age of 38, alleging a disability onset date of October 1, 2002, due to emotional/mental impairments. After Plaintiff's application was denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ") and such hearing was held on August 26, 2008. By decision dated September 15, 2008, the ALJ concluded that Plaintiff was not disabled. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on February 26, 2009. Plaintiff has thus

exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the Commissioner committed reversible error in failing to consider and properly evaluate all relevant evidence, including a post-hearing letter submitted by Plaintiff's treating psychiatrist, Syed Raza, M.D. Plaintiff requests that the Commissioner's decision be reversed and the case remanded for an award of SSI retroactively from the date of Plaintiff's application; or alternatively, that the case be remanded for reconsideration.

## BACKGROUND

### Work History and Application Forms

On her application for benefits, Plaintiff represented that during the day, she drank coffee, talked on the phone, read sometimes, and went for a walk. She indicated that she had no problem with her personal care, but sometimes needed reminders to take care of herself. She did not prepare her own meals or drive, but did make her bed and clean up her room, and went outside two to three times a week. She represented that she had problems getting along with people because her "moods bounce," and that her illness affected her memory, her ability to complete tasks, and her concentration. She could pay attention for only ten to 15 minutes, she did not follow written instructions well, her ability to follow spoken instructions depended on her mood, and she did not handle stress well. (Tr. 95-101.)

**Medical Record**

On September 18, 2005, Plaintiff was admitted to a psychiatric hospital, complaining of being "real depressed." It was noted that Plaintiff had a history of marijuana and cocaine abuse, for which she had been to substance abuse treatment three times. Plaintiff reported occasional suicidal thoughts; decreased concentration and memory; feelings of hopelessness, helplessness, and worthlessness; decreased energy; crying spells; and decreased sleep. It was noted that Plaintiff had at least two previous psychiatric admissions and multiple emergency room ("ER") visits for psychiatric issues. It was also noted that while growing up, Plaintiff was sexually abused by a neighbor's son as well as her own cousin. Her Global Assessment of Functioning ("GAF") score upon admission was 35-40.[1] (Tr. 137.)

Plaintiff was discharged on September 21, 2005, with a diagnosis of mood disorder (not otherwise specified), cannabis dependence, cocaine abuse, borderline personality disorder, Turner's syndrome,[2] asthma, chronic mental illness, and a GAF of

---

[1]  A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate "[s]ome impairment in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment.

[2]  Turner's syndrome is a chromosomal condition that occurs in females. It can cause a variety of medical and developmental problems, including short stature, heart defects, and certain learning disabilities. http://www.mayoclinic.com.

60.  (Tr. 131-32.)  The record indicates that Plaintiff was treated by Dr. Raza as an outpatient at a clinic from September 28, 2005, through June 4, 2008.  On September 28, 2005, Dr. Raza assessed bipolar disorder, cannabis dependence, cocaine abuse, and possible personality disorder and prescribed Prozac and Seroquel (a drug used to treat severe mental disorders).  (Tr. 302-04.)  Notes from Plaintiff's office visits with Dr. Raza in November 2005 and January 2006 indicated that her mood and depression were stabilizing.  (Tr. 305-06.)  But on April 22, 2006, Plaintiff was seen in the ER for having had suicidal ideations for the last few days, and a plan for a suicide attempt by "overdose."  Plaintiff was discharged later that day in stable condition.  (Tr. 193-97.)

On May 19, 2006, Plaintiff was seen at a psychiatric clinic by Soraya Asadi, M.D. An accounting of Plaintiff's psychiatric and social history noted that she was diagnosed with Turner's Syndrome at the age of 16 and that she began receiving psychiatric care in 1993 or 1994 (at the age of 25 or 26).  Dr. Asadi stated that while marijuana may have been impairing Plaintiff's concentration, Plaintiff also had "a lifelong history of difficulty with memory, attention, certain school subjects, as well as distractibility," all of which were consistent with cognitive deficits commonly seen in Turner's sydrome.  Dr. Asadi diagnosed major depressive disorder (recurrent and moderate), cocaine and alcohol dependence in full sustained remission, active cannabis dependence, borderline personality disorder, probable mental retardation, Turner's Syndrome, and a GAF of approximately 50.  (Tr. 161-64.)

On June 20, 2006, Plaintiff was admitted to the hospital after overdosing on Seroquel. (Tr. 199.) Upon discharge on June 23, 2006, she was diagnosed with bipolar affective disorder type II, cannabis abuse, cocaine abuse, a history of alcohol dependence, a history of borderline personality disorder, and Turner's Syndrome. Her discharge medications were Lamictal (used to treat bipolar disorder), Fluoxetine (used to treat depression), and Seroquel. (Tr. 269-70.)

Plaintiff was seen again by Dr. Raza on July 19, 2006, at which time he noted that she was hearing voices and speaking loudly with an inappropriately happy affect. (Tr. 308.) Plaintiff had scheduled office visits on August 9, 2006, and September 6, 2006, the latter of which she canceled. (Tr. 335-36.)

On September 22, 2006, a Psychiatric Review Technique Form and a Mental Residual Functional Capacity ("RFC") Assessment were completed by a state agency non-examining psychologist, Robert Cottone, Ph.D. Dr. Cottone assessed affective disorder (defined as disturbance of mood, accompanied by bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes); personality disorder (defined as inflexible and maladaptive personality traits, as evidenced by intense and unstable interpersonal relationships and impulsive and damaging behavior); and substance addiction disorder (defined as behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system).

Plaintiff was thought to have marked limitations in maintaining social functioning, and moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace. Plaintiff was also noted to have had one to two episodes of decompensation, each of extended duration. Dr. Cottone noted that Plaintiff was abusing substances as recently as June 2006, and that Plaintiff "cannot be conclusively assumed to be independent of substance effects or residual effects of recent substance abuse." He further stated that Plaintiff's concentration, persistence, or pace "appeared to be moderately . . . limited at worst," that there were "marked social limits that would prevent public contact work," and that Plaintiff was partially credible. (Tr. 310-21.)

Dr. Cottone's mental RFC assessment reported marked limitation in the ability to understand, remember, and carry out detailed instructions, and in the ability to interact appropriately with the general public; moderate limitations in most other areas of work-related activities, such as maintaining regular attendance, working in coordination with or in proximity to others, and completing a normal workday and workweek without interruptions from psychologically-based symptoms; and no significant limitation in other areas, such as the ability to understand and remember very short and simple instructions. Dr. Cottone opined that Plaintiff should avoid work that required extensive interpersonal interaction, handling complaints or dissatisfied customers, close proximity to co-workers and to available controlled substances, and public contact. (Tr. 322-24.)

At her visit with Dr. Raza on October 11, 2006, Plaintiff reported that her mood swings continued, and she was observed to be "inappropriately happy and laughing

frequently." (Tr. 334.) On November 8, 2006, Dr. Raza completed a Mental Medical Source Statement ("MSS") on which he indicated that Plaintiff had marked limitations in the ability to behave in an emotionally stable manner, maintain reliability, relate in social situations, maintain socially acceptable behavior, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from symptoms; moderate limitations in many of the same areas that Dr. Cottone had found moderate limitations; and mild limitations in the ability to understand and remember simple instructions and to make simple work-related decisions. One episode of decompensation that lasted at least two weeks was noted to have occurred in July 2006.

Dr. Raza also noted that Plaintiff had a substantial loss of the ability to make simple work-related decisions, respond appropriately to supervision and co-workers, and deal with changes in a routine work setting. He stated that the assessed limitations had existed at this severity since Plaintiff was a teenager. He diagnosed bipolar I disorder (a more severe form of bipolar disorder), cannabis dependence, cocaine abuse, and a GAF in the previous year ranging from the 50s to 70. (Tr. 326-29.)

Dr. Raza's November 15, 2006 treatment notes indicated that Plaintiff thought she was becoming hypomanic due to taking Lamictal. (Tr. at 333.) Plaintiff cancelled two appointments in January 2007, and saw Dr. Raza next on March 28, 2007, when it was noted that she had to be persuaded to restart Lamictal, which she had previously stopped taking on her own. (Tr. 331-32, 347.) On June 27, 2007, Dr. Raza noted that Plaintiff's last cocaine use was six months earlier. (Tr. 346.) On August 22, 2007, he noted that

7

Plaintiff was hyper and a "ball of energy," and was possibly hearing voices. (Tr. 345.)

Plaintiff saw Dr. Raza in October and November of 2007. At the November visit, she

was feeling anxious and impatient. She next saw Dr. Raza again on April 9, 2008, stating

that she was unable to come in on an earlier date due to transportation issues. At this

visit, Plaintiff remarked that she had helped a friend move. (Tr. 350-52.) Dr. Raza's

treatment notes from almost every visit included the comment that Plaintiff was "alert."

(Tr. 333-53.)

On July 16, 2008, Dr. Raza completed another Mental MSS, with findings similar

to those reported in his November 8, 2006 MSS, but noting several more marked

limitations. Dr. Raza opined that Plaintiff was suffering from bipolar I disorder, due to

which "her thought process becomes psychotic, her behavior becomes very impulsive and

her judgment is severely impaired." Dr. Raza stated that Plaintiff's most recent GAF was

65, with a high of 70 and a low of 50 in the previous year. (Tr. at 355-58.)

On the same date, Dr. Raza also filled out a MSS concerning drug abuse and

alcoholism. He noted that while Plaintiff's condition was made worse by substances, she

had not used them in over a year, and substantially similar limitations would remain even

if she did not abuse substances. (Tr. 359.)

**Evidentiary Hearing of August 26, 2008 (Tr. 21-38)**

Plaintiff testified that she was 40 years old and had completed the eleventh grade.

She had tried to get a GED but found it difficult to concentrate. She testified that she had

had problems in the past with marijuana and cocaine, which she started using in her 20s,

but that it had been over a year since she had used either substance.  In 2007 and the first part of 2008, her driver's license had been suspended due to traffic violations.

Plaintiff stated that she had on occasion stopped taking her medications on her own, usually because she would run out of it between visits to see Dr. Raza.  She was still going to the clinic every two months to see Dr. Raza, get her medications refilled, and see a caseworker whom she saw there "once in a while."  Plaintiff testified that without her medication, she was "up and down all over the place," could not concentrate on anything, and would hear noises and voices.  She had no children and lived with her mother.

Upon examination by her counsel, Plaintiff testified that she sometimes heard voices and noises even when she took her medication.  Her medication did not completely take care of her "being up and down," but it "evens [her] out a little bit."  She stated that, even with her medication, she was still manic, and that she was "more on the manic side of bipolar."  She still had manic episodes during which she could not sit still or concentrate on one thing and had trouble sleeping.  Plaintiff did housework sometimes, but had trouble concentrating and staying with one task.

After questioning Plaintiff about her past work, the VE determined that Plaintiff had no past relevant work.  The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience, who could understand, remember, and carry out at least simple instructions and non-detailed tasks; demonstrate adequate judgment to make simple work-related decisions; respond appropriately to supervisors and co-workers in

their task-oriented setting, where contact with others is casual and infrequent; adapt to routine, simple work changes; not work in a setting which includes constant or regular contact with the general public; not perform work which includes more than infrequent handling of customer complaints; and not work in a setting with access to controlled substances; and who had no physical restrictions. The VE testified that such an individual would be able to work in a housekeeping position and a packer/mailer position, both unskilled jobs at the light exertional level that existed in significant numbers in the local, state, and national economies.

The VE was then asked to consider an individual who had the limitations described by Dr. Raza on the July 16, 2008 Mental MSS. The VE testified that just considering the marked limitations described by Dr. Raza, and not a GAF of 65-70, there would be no jobs that the individual could perform, whereas generally a person with a GAF of 65-70 would be able to perform the jobs previously identified by the ALJ. If a person had a GAF closer to 50 or below, there would be no work that such an individual could perform. Lastly, the VE stated that an individual of Plaintiff's age, education, and work experience, who had marked limitations in maintaining reliability and in completing a normal workday and work week without interruptions from symptoms, would have significant difficulty maintaining a full-time job on a regular basis.

**Post-Hearing Evidence**

On August 26, 2008, the ALJ sent a letter to Dr. Raza seeking clarification of his November 8, 2006 and July 16, 2008 MSS's, which, according to the ALJ, appeared to

conflict with medical evidence of record. The ALJ inquired into the GAF scores of 65-70; the effect of cocaine and cannabis abuse; the fact that his MSS's did not seem to contain all the necessary information needed to assess the severity of the impairment(s), including the effects of noncompliance with medications; the fact that the MSS's did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques; and the fact that they did not adequately address what Plaintiff could do despite her impairments. The letter stated that the additional information was required within ten days. (Tr. 127-28.)

In a written response dated September 3, 2008, Dr. Raza explained that a GAF in the 60s and 70s can easily fall into the 30s and 40s in a matter of days. He noted that some of Plaintiff's visits were "flawless and enjoyable," whereas at other visits, she laughed inappropriately, spoke in a very loud voice, and stated that she heard voices. He also stated that a bipolar I patient may pass for a normal person in between episodes, but that "when the unpredictable happens and patient becomes psychotically depressed or manicky, then patient's level of functioning drops down and the patient simply cannot work." (Tr. 360-61.)

**ALJ's Decision of September 15, 2008 (Tr. 8-15)**

The ALJ referenced his letter to Dr. Raza and stated that no response had been received. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of July 24, 2006, and that she had the severe impairments of bipolar disorder and a history of substance dependence. The ALJ stated that although Dr.

11

Raza's examination reports included some mention of extroverted behavior, inappropriate laughing, and a loud voice, they also routinely described Plaintiff as having been alert, oriented, coherent, relevant, and rational.

The ALJ found that Plaintiff's impairments did not medically meet or equal the severity criteria of a deemed-disabling impairment listed in the Commissioner's regulations. He found that Plaintiff was moderately limited in activities of daily living, social functioning, and concentration, persistence, or pace, and had experienced no episodes of decompensation during the relevant time period.

The ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels, and was able to understand, remember, and carry out at least simple instructions and non-detailed tasks; demonstrate adequate judgment to make simple work-related decisions; respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was casual and infrequent; and adapt to routine/simple work changes. The ALJ found that Plaintiff, however, had the limitations as described by Dr. Cottone in his mental RFC assessment.

The ALJ found significant the "relatively unremarkable findings of examinations" conducted during the relevant time period. He pointed to treatment notes which indicated that Plaintiff was not diligent in keeping her scheduled appointments and not fully compliant with her medication regimen. The ALJ concluded that Plaintiff's failure to fully participate in her treatment tended to be inconsistent with a finding of disability, because this suggested the "possibility of tolerable or no symptomatology."

The ALJ also found significant Plaintiff's acknowledgment of continued ability to engage in a variety of daily activities. Specifically, the ALJ noted that since her alleged onset date, she had retained the capacity to attend to personal care activities, do some household chores, and read. The ALJ also noted the comment in her treatment record dated April 9, 2008, that she was able to help a friend move. The ALJ also found that Plaintiff's weak work record for the past 15 years detracted from her allegations of disability.

The ALJ placed "nominal weight" on Dr. Raza's MSS's on the ground that they were not supported by Dr. Raza's treatment notes, which indicated that Plaintiff, during at least portions of her claimed period of disability, had a GAF of 65-70. The ALJ stated that he "considered the administrative findings of fact made by the State agency medical physicians and other consultants."

The ALJ concluded, based on the testimony of the VE, that Plaintiff was capable of making a successful adjustment to "other work that exists in significant numbers in the national economy," and that therefore, Plaintiff was not disabled since July 24, 2006, the date her application for SSI was filed.

**Appeals Council (Tr. 1-4)**

As noted above, the Appeals Council denied Plaintiff's request for review on February 26, 2009. It wrote that it considered the reasons Plaintiff disagreed with the ALJ's decision, as well as Dr. Raza's letter dated September 3, 2008, and found that "[t]he additional evidence submitted with that letter contain[ed] no new medical

information which would support changing the [ALJ's] decision."

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling

impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. If so, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors. See Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010).

In addition, when, as here, "'the Appeals Council has considered new and material evidence and declined review, [the reviewing court] must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.'" Gartman v. Apfel, 220 F.3d 918, 922 (8th Cir. 2000) (quoting Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir. 2000)). In the Eighth Circuit, the role of the reviewing court is to factor in such evidence and determine whether the ALJ's decision is still supported by substantial evidence, requiring the court to speculate as to how the ALJ would have weighed the newly submitted reports had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621-22 (8th Cir. 1997); Jones v. Astrue, No. 4:07-CV-4026, 2008 WL 360678, at *3 (W.D. Ark. Feb. 8, 2008).

**Plaintiff's Mental RFC**

Plaintiff argues that the Commissioner's assessment of her mental RFC is not supported by the medical evidence in the record. Plaintiff argues that Dr. Raza's September 3, 2008 letter supported his earlier MSS's, and that his opinions were not

accorded proper weight.

Generally, the Commissioner is to give a treating medical source's opinion on the issues of the nature and severity of an impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(d)(2).  The Commissioner may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (citations omitted).

Here, the ALJ credited the RFC assessment of Dr. Cottone, a non-examining consulting psychologist, over that of Dr. Raza, Plaintiff's treating psychiatrist.  To be sure, an ALJ is required to consider the findings made by state-agency physicians and psychologists.  See 20 C.F.R. § 416.927(f)(2)(i).  But, here it can hardly be said that Dr. Cottone's findings are supported by better or more thorough medical evidence than Dr. Raza's.  Nor were Dr. Raza's two MSS's inconsistent overall with his records from Plaintiff's office visits, which are replete with references to Plaintiff's mood swings, suicidal gestures, and inappropriate behavior.  Furthermore, the MSS's are consistent with Dr. Raza's September 3, 2008 letter, which the ALJ did not consider in his decision and which the Appeals Council provided no reason for not crediting.

The Court finds the ALJ's assertion that Plaintiff's examination findings were

"relatively unremarkable" problematic. Plaintiff has had multiple psychiatric admissions as well as ER visits for psychiatric issues. Dr. Raza diagnosed Plaintiff with bipolar disorder, and Dr. Asadi diagnosed her with major depressive disorder, borderline personality disorder, and probable mental retardation.

The ALJ's reliance on the fact that Plaintiff was not fully compliant in taking her medications is not a persuasive reason to discredit Dr. Raza's opinions or Plaintiff's own allegations, because such noncompliance might be a result of Plaintiff's illness itself. See Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (stating, regarding a claimant with bipolar disorder, that "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (citation omitted). In sum, the Court concludes that the Commissioner's decision is not supported by substantial evidence in the record as a whole.

Ordinarily, when a reviewing court concludes that a denial of disability benefits was improper, the court, out of "abundant deference to the ALJ," should remand the case for further administrative proceedings; remand with instruction to award benefits is appropriate "only if the record 'overwhelmingly supports' such a finding." Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000). A case can be made that here, the evidence strongly supports a finding of disability. However, the record falls shy of "overwhelmingly" supporting such a finding, and the Court believes that the better approach is give the Commissioner a chance to more fully consider and evaluate the

entire record, including Dr. Raza's letter of September 3, 2008, and to reassess Plaintiff's RFC and issue a new decision based upon such consideration.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2010.